IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CONTINENTAL CASUALTY COMPANY, ) <br> NATIONAL FIRE INSURANCE COMPANY OF ) <br> HARTFORD, AND VALLEY FORGE ) <br> INSURANCE COMPANY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL MANAGEMENT SOLUTIONS, ) <br> MICHAEL WIEBRACHT AND STEVEN ) <br> WIEBRACHT (individually and doing business ) <br> as Federal Management Solutions), WPS ) <br> GROUP, LLC d/b/a Federal Management ) <br> Solutions, and BLACKHAWK VENTURES, LLC, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No:   5:20-cv-00768 <br><br> [Related Case: 5:17-cv-00807-FB] <br><br><br><br> JURY DEMANDED |

**COMPLAINT TO AVOID FRAUDULENT TRANSERS AND FOR OTHER RELIEF**

NOW COMES Continental Casualty Company, National Fire Insurance Company of Hartford, and Valley Forge Insurance Company (collectively, "CNA"), by and through its undersigned counsel, and for its Complaint against Federal Management Solutions, Michael Wiebracht and Steven Wiebracht, individually and doing business as Federal Management Solutions, WPS Group, LLC d/b/a Federal Management Solutions, and Blackhawk Ventures, LLC ("Blackhawk Ventures"), states as follows:

**NATURE OF THE ACTION**

1.     CNA holds a judgment entered by this Court on May 31, 2018, in the amount of $97,545.74, in case number 5:17-cv-00807.  With post-judgment interest, the amount due to CNA as of the filing of this case is not less than $102,021.49.  This judgment relates to unpaid insurance premiums incurred and owed by Blackhawk Ventures in the ordinary course of its construction

1

industry business activities. During the post-judgment deposition of Ruben Villarreal, a 70-year-old senior citizen and disabled military veteran that is the nominal President and Owner of Blackhawk Ventures, Mr. Villarreal disclosed that assets of Blackhawk Ventures were regularly and routinely transferred out of the company under the guise of a "management agreement" with Federal Management Solutions (an agreement he has never seen), leaving insufficient assets to pay for the Blackhawk Ventures' ordinary business expenses, such as the insurance premiums due to CNA. Based on Mr. Villarreal's testimony, a purpose of the management agreement was to permit persons that were not disabled military veterans to have beneficial (but not legal) ownership of Blackhawk Ventures, so they could capitalize on Mr. Villarreal's status as a disabled veteran, to obtain certain benefits available to disabled veterans under applicable law, including under programs administered by the United States Small Business Administration. As explained below, this scheme prejudiced CNA, and gives rise to the claims for relief set forth herein.

## PROCEDURAL BACKGROUND, PARTIES, AND JURISDICTION

2. Continental Casualty Company, National Fire Insurance Company, and Valley Forge Insurance Company are Illinois corporations with a principal place of business at 151 N. Franklin, Chicago, IL 60606, which are authorized to do business in Texas.

3. Blackhawk Ventures is a Texas limited liability company that had its principal place of business in San Antonio, Texas.

4. CNA previously commenced a lawsuit against Blackhawk Ventures and obtained a judgment against Blackhawk Ventures.

5. A true and correct copy of CNA's Complaint against Blackhawk Ventures, the factual allegations of which are incorporated herein by reference, is attached as ***Exhibit A***.

6. A true and correct copy of the judgment issued by this Court against Blackhawk Ventures, which is incorporated herein by reference, is attached as ***Exhibit B***.

7. Michael Wiebracht is, upon information and belief, an individual that resides in and/or regularly conducts business in San Antonio, Texas.

8. Steven Wiebracht is, upon information and belief, an individual that resides in and/or regularly conducts business in San Antonio, Texas.

9. Federal Management Solutions was not, upon information and belief, an entity incorporated under the laws of any state prior to September 30, 2010. Rather, Michael Wiebracht and/or Steven Wiebracht were, upon information and belief, doing business as Federal Management Solutions until at least September 30, 2010.

10. WPS Group, LLC is a Texas limited liability company that has a registered business address of 421 W. Cevallos, San Antonio, Texas 78204. As of September 30, 2010, it was registered to do business as Federal Management Solutions. The Texas Secretary of State records disclose it is managed by Michael Padron, 113 South Tower Rd., San Antonio, Texas 78232.

11. It is unknown whether one or more persons continued doing business as Federal Management Solutions after WPS Group, LLC began using the assumed name "Federal Management Solutions."

12. In this Complaint, "Federal Management Solutions" means, collectively and in the alternative, Michael and Steven Wiebracht doing business as Federal Management Solutions, and WPS Group, LLC doing business as Federal Management Solutions.

13. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on diversity of citizenship, and because the amount in controversy exceeds $75,000.

14. Venue is proper pursuant to 28 U.S.C. § 1391(b), including based on the defendants' residency.

## FACTUAL BACKGROUND

15. Records of the Texas Secretary of State show that Blackhawk Ventures was formed on April 16, 2004.

16. Mr. Villarreal was not an incorporator or organizer of Blackhawk Ventures. He has testified that he became the President and Owner of Blackhawk Ventures around 2006-2007 when he was approached by the leadership of Federal Management Solutions "to take over the ownership of th[e] company because the company needed to be - - at least the way it was explained to me at the time was that it needed to be headed by a veteran, a service disabled veteran."

17. A true and correct copy of the transcript of Mr. Villarreal's testimony is attached as ***Exhibit C***.

18. Prior to the time he was approached by Federal Management Solutions, Mr. Villarreal was a construction superintendent at a company call Mapco. He had no ownership interest in that entity. Federal Management Solutions approached him with an offer – for no financial investment or purchase price, become the President and Owner of Blackhawk Ventures.

19. Mr. Villarreal has explained the reason for this offer as follows. Prior to his association, Blackhawk was owned by a person that was a disabled military veteran. When that person moved out of state, the United States Small Business Administration raised an issue with this person living outside the state in which Blackhawk Ventures was doing business. Defendant Michael Wiebracht, holding himself out as the Chief Operating Officer of Federal Management Solutions, then "interviewed" Mr. Villarreal. Michael Wiebracht and Federal Management Solutions offered Mr. Villarreal a job on condition that he "meet certain criteria."

20. The criteria Mr. Villarreal had to meet were establishing himself as a service disabled veteran.

21. Mr. Villarreal was <u>not</u> classified as a service disable veteran at the time of the interview. He was "just a standard veteran," in his words. Michael Wiebracht and Federal Management Solutions offered to make Mr. Villarreal the President and Owner of Blackhawk Ventures if he approached the military (specifically the Navy, of which Mr. Villarrreal was a 20-year veteran), sit through a series of physical examinations for the deficiencies that were deemed service related, and once that was established, get United States Small Business Administration approval as a service disabled veteran.

22. Mr. Villareal did what Michael Wiebracht and Federal Management Solutions asked, and obtained service disabled veteran status and United States Small Business Administration approval. Mr. Villarreal explained that once the United States Small Business Administration acknowledged his disabilities, ownership of Blackhawk Ventures partially passed to him.

23. At the time Mr. Villarreal became an owner of Blackhawk Ventures, there were three other owners. Within a few months, however, the United States Small Business Administration informed Blackhawk Ventures that to receive the benefits available to service disabled veterans, Mr. Villarreal had to be the sole owner. In response, the three other owners transferred their ownership interests to Mr. Villarreal, and he became the sole owner of Blackhawk Ventures, at least on paper.

24. Although he was the sole "President and Owner" of Blackhawk Ventures, Mr. Villarreal did not make decisions that would be typical and customary for the President and Owner of a company. He did not make decisions with respect to purchasing insurance for

Blackhawk Ventures. That was done by Federal Management Solutions. Similarly, Federal Management Solutions provided all the employees (office manager, construction superintendent, and receptionist), and paid those people's salaries. Federal Management Solutions also provided all the labor for the construction jobs that were bid on and awarded to Blackhawk Ventures. Federal Management Solutions would also tell the office manager it provided what bills to pay with revenue that was nominally Blackhawk's revenue.

25. The benefit of Mr. Villarreal's participation as President and Owner of Blackhawk Ventures was that Blackhawk Ventures had the access and the ability to bid on contracts that were not available to all construction companies. As a company nominally owned by a service disabled veteran, Blackhawk Ventures could bid on contracts that only "service disable veteran owned small business can compete in," as explained by Mr. Villarreal.

26. Mr. Villarreal did not control the actual bidding that Blackhawk Ventures did – that was done by Federal Management Solutions too. He never saw the project budgets – that too was done by Federal Management Solutions. He didn't procure the subcontractors or decide what bids to accept – that was likewise a Federal Management Solutions responsibility.

27. With regard to the amounts due to CNA (the amounts for which CNA obtained a judgement from this Court), Mr. Villarreal was not aware the amounts were not paid – he "would not have known that" because "it wasn't one of the things that we dealt with as a company." Mr. Villarreal admits Blackhawk Ventures needed the insurance policies from CNA to get these restricted-bid government contracts – the CNA insurance was an essential operating expense. He nonetheless agrees he "didn't have a clue what was going on at Blackhawk" with regard to insurance and what was needed for specific bids Blackhawk made, or for the contacts that Blackhawk obtained.

28. Although Mr. Villarreal was nominally the President and Owner of Blackhawk Ventures and although Federal Management Solutions was purportedly operating under a "management agreement," Mr. Villarreal does not know how Federal Management Solutions charged for the services provided, and does not know whether Federal Management Solutions actually paid for services and contracts (like insurance and construction subcontracts) that were obtained or entered into on Blackhawk's behalf. In fact, Mr. Villarreal cannot recall whether he has ever seen this "management agreement" with Federal Management Solutions. He was clear that he does not have a copy of the management agreement.

29. Although he was the President and Owner, Mr. Villarreal was a wage-earning, W-2 employee of Blackhawk Ventures. To his understanding, he was the only employee – everyone else was "carried" by Federal Management Solutions.

30. Mr. Villarreal agrees that, with the exception of going to site visits, Federal Management Solutions was running the Blackhawk Ventures operation. He did the "procuring" and Federal Management Solutions did everything else.

31. To Mr. Villarreal's understanding, Michael Wiebracht was the Chief Operating Officer of Federal Management Solutions and Steven Wiebracht was the Chief Financial Officer of Federal Management Solutions. Mr. Villarreal's understanding is that there were various other construction businesses that Federal Management Solutions served as the purported "manager" of. This includes Mr. Villarreal's former employer, Mapco.

32. Mr. Villarreal's tenure as the President and Owner of Blackhawk Ventures ended when he was asked/told to vacate his office. At the time, he and Blackhawk Ventures were located at 429 West Cevallos, in San Antonio, Texas. Federal Management Solutions was located right

next door, at 427 West Cevallos. Apparently Mapco, his former employer, was also located at 427 West Cevallos.

33. Mr. Villarreal only learned that Blackhawk Ventures would not be able to continue as a going concern because Federal Management Solutions told him there was not any money to meet Blackhawk Ventures' obligations. That was the extent of the information he received. Mr. Villarreal was not involved in any discussions or decision making about what Blackhawk Ventures was going to do about its inability to pay debts as they came due. As with substantially all other aspects of Blackhawk Ventures, this was handled by Federal Management Solutions.

34. Based on Mr. Villarreal's testimony, Federal Management Solutions and the Wiebracht defendants completely controlled and dominated the Blackhawk Ventures entity, and utilized that entity as a strawman or facade to obtain valuable government contracts, from which they derived substantial revenue to the detriment of creditors of Blackhawk Ventures, including CNA.

## COUNT I – VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT

35. CNA incorporates by reference the foregoing allegations as if fully set forth herein.

36. The Uniform Fraudulent Transfer Act is enacted as Texas Business and Commerce Code § 24.001 *et seq.*

37. Federal Management Solutions and/or Michael and Steven Wiebracht and/or WPS Group, LLC (collectively, the "Federal Management Solutions Defendants") operated Blackhawk Ventures' business under an agreement, and/or controlled substantially all of Blackhawk Ventures' assets, at all relevant times.

38. Under the Uniform Fraudulent Transfer Act, the Federal Management Solutions Defendants are each an "Affiliate" and an "Insider" of Blackhawk Ventures.

39. Upon information and belief, at all relevant times Blackhawk Ventures has been insolvent within the meaning of Section 24.003 of the Uniform Fraudulent Transfer Act.

40. Upon information and belief, Blackhawk Ventures made (or was caused to make) one or more transfers to or for the benefit of the Federal Management Solutions Defendants that was fraudulent as to CNA under Section 24.005 of the Uniform Fraudulent Transfer Act, including without limitation because: (I) the transfers were made with actual intent to hinder, delay, or defraud one or more of the Blackhawk Ventures' creditors; and/or (II) Blackhawk Ventures did not receive reasonably equivalent value in exchange for the transfer, and Blackhawk Ventures: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of Blackhawk Ventures were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that Blackhawk Ventures would incur, debts beyond Blackhawk Ventures' ability to pay as they became due.

41. Additionally, or in the alternative, upon information and belief, Blackhawk Ventures made (or was caused to make) one or more transfers to or for the benefit of the Federal Management Solutions Defendants that was fraudulent as to CNA under Section 24.006 of the Uniform Fraudulent Transfer Act, including without limitation because the transfer was made after Blackhawk Ventures became liable to CNA under the CNA Policies, and the transfer was made without receiving a reasonably equivalent value, and Blackhawk Ventures was insolvent or became insolvent as the result of the transfer.

42. Based on the testimony of Mr. Villarreal, the nominal President and Owner of Blackhawk Ventures, the specific dates and amounts of the transfers made to or for the benefit of

the Federal Management Solutions Defendants are matters that are within the knowledge of the Federal Management Solutions Defendants and not Mr. Villarreal, given their complete domination of the business and affairs of Blackhawk Ventures.

43. CNA is owed not less than $102,021.49 by Blackhawk Ventures. Pursuant to Section 24.008 of the Uniform Fraudulent Transfer Act, CNA is entitled to and CNA seeks:

   a. Avoidance of one or more transfers avoidable under the Uniform Fraudulent Transfer Act, sufficient to satisfy the claim of CNA (not less than $102,021.49);

   b. Attachment of the assets of the Federal Management Solutions Defendants in an amount not less than $102,021.49;

   c. Appointment of a Receiver of the Federal Management Solutions Defendants' assets; and

   d. Execution against not less than $102,021.49 of the Federal Management Solutions Defendants' assets.

## COUNT II – BREACH OF CONTRACT – ALTER EGO LIABILITY

44. CNA incorporates by reference the foregoing allegations as if fully set forth herein.

45. The Federal Management Solutions Defendants utilized Blackhawk Ventures as a strawman or façade to do business and obtain benefits to which they would not otherwise be entitled under applicable law.

46. The Federal Management Solutions Defendants' conduct was not undertaken for valid business purposes.

47. The Federal Management Solutions Defendants were the alter ego of Blackhawk Ventures, and accordingly the debts and liabilities of Blackhawk Ventures should be deemed,

adjudged, and decreed to be the debts and liabilities of the Federal Management Solutions Defendants.

48. CNA is owed not less than $102,021.49 by Blackhawk Ventures, for the reasons set forth in the Complaint attached as Exhibit A and as determined, adjudged and decreed by the Judgment attached as Exhibit B, and therefore the Federal Management Solutions Defendants should be held liable for all amounts that Blackhawk Ventures owes to CNA, due to their use of Blackhawk Ventures as a mere alter ego.

49. Accordingly, CNA seeks a judgment against the Federal Management Solutions Defendants, jointly and severally, for all amounts owed by Blackhawk Ventures under the Judgment, which is an amount not less than $102,021.49.

## COUNT III – VEIL PIERCING – ACTUAL FRAUD

50. CNA incorporates by reference the foregoing allegations as if fully set forth herein.

51. Under Texas law, the "corporate veil" may be pierced in circumstances of "actual fraud."

52. In this context, actual fraud means dishonesty of purpose or intent to deceive.

53. The Federal Management Solutions Defendants did not have an honest purpose when they transferred or caused to be transferred the ownership interests of Blackhawk Ventures to Mr. Villarreal.

54. The Federal Management Solutions Defendants that facilitated Blackhawk Ventures' acquisition of the CNA Policies from CNA did not have an honest purpose when they procured those policies nominally for Blackhawk Ventures, obtained the benefits of the CNA Policies, and then caused Blackhawk Ventures to forego payment of the policy premiums, and

instead transferred Blackhawk Ventures' assets to or for the benefit of the Federal Management Solutions Defendants, rendering Blackhawk Ventures unable to pay the amounts due to CNA.

55. The Federal Management Solutions Defendants who held themselves out as contracting with CNA on behalf of Blackhawk Ventures had a purpose and intent to deceive CNA when they contracted with CNA purportedly on Blackhawk's behalf, including without limitation because they were incurring indebtedness they knew Blackhawk Ventures could not pay, or which they would prevent Blackhawk Ventures from paying and/or being able to pay, including by transferring away Blackhawk Ventures' assets.

56. Under the totality of the circumstances, cause exists to pierce the corporate veil and hold the Federal Management Solutions Defendants liable for all amounts for which Blackhawk Ventures is liable to CNA.

57. Accordingly, CNA seeks a judgment against the Federal Management Solutions Defendants, jointly and severally, for all amounts owed by Blackhawk Ventures under the Judgment, which is an amount not less than $102,021.49.

## JURY TRIAL DEMANDED

58. Plaintiffs demand a jury on all claims and matters triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, CNA respectfully requests that this Honorable Court grant judgment on each of the above-stated causes of action, enter judgment against each of the Federal Management Solutions Defendants, jointly and severally, in an amount not less than $102,021.49, and grant such other and further relief as is equitable and just.

Date: July 1, 2020

Respectfully Submitted,

Shelton & Valadez P.C.
600 Navarro Suite 500
San Antonio, Texas 78205
T: (210) 349-0515

By: _____
ROBERT VALADEZ
State Bar No. 20421845
Federal Bar Id. 10959
DAVID COATES
State Bar No. 00783844
rvaladez@shelton-valadez.com
dcoates@shelton-valadez.com

**ATTORNEY FOR PLAINTIFF
CONTINENTAL CASUALTY COMPANY,
NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD, AND VALLEY FORGE
INSURANCE COMPANY**