ᴀᴏ (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT

## for the

### Western District of Texas

| Continental Casualty Company et al. | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   5:20-CV-00768-FB |
| Federal Management Solutions et al. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                      Ridout, Barrett & Co., P.C.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

See Attached Exhibit A - Rider to Subpoena

| Place: Shelton & Valadez, P.C., 600 Navarro, Suite 500, San Antonio, TX 78205 (or email to jeggum@fgppr.com as stated in Exhibit A - Rider) | Date and Time: 02/02/2021 12:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      01/18/2021

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Continental Casualty Company et al. _____, who issues or requests this subpoena, are:

John Eggum, Foran Glennon, 222 N. LaSalle St., Ste. 1400, Chicago, IL 60601 | jeggum@fgppr.com | 312-863-5053

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

(Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No. 5:20-CV-00768-FB

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☑ I served the subpoena by delivering a copy to the named person as follows:

Ridout, Barrett & Co., P.C., Attn: Milton G. Barrett, 922 Isom Rd., Ste 100, _____

San Antonio, TX 78216-4184 _____ on *(date)* 01/18/2021 ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date: 01/18/2021 _____

/s/ John Eggum
_____
*Server's signature*

John Eggum
_____
*Printed name and title*
Foran Glennon
222 N. LaSalle St., Ste. 1400
Chicago, IL 60601
jeggum@fgppr.com
_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
**(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
**(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
**(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
**(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
**(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
**(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
**(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
**(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
**(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
**(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
**(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
**(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
**(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
**(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
**(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, AND VALLEY FORGE INSURANCE COMPANY, | ) ) ) ) ) | Case No: 5:20-cv-00768-FB-ESC |
| Plaintiff, | ) ) | [Related Case: 5:17-cv-00807-FB] |
| v. | ) ) | |
| FEDERAL MANAGEMENT SOLUTIONS, MICHAEL WIEBRACHT AND STEVEN WIEBRACHT (individually and doing business as Federal Management Solutions), WPS GROUP, LLC d/b/a Federal Management Solutions, and BLACKHAWK VENTURES, LLC, | ) ) ) ) ) ) ) | JURY DEMANDED |
| Defendants. | ) ) | |

To:   Ridout, Barrett & Co., P.C.
      Attn: Milton G. Barrett
      922 Isom Rd., Ste 100
      San Antonio, TX 78216-4184

**EXHIBIT A TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

Pursuant to Rule 45 of the Federal Rules of Civil Procedure, Ridout, Barrett & Co., P.C. is requested to produce the documents listed below.

**INSTRUCTIONS**

1.      In accordance with applicable law, this subpoena calls for the production of responsive documents in your possession, custody or control, or in the possession, custody or control of any and all of your employees, accountants, representatives, agents, and other persons controlled by you or acting on your behalf, without regard to the physical location of such

1

documents and/or the location where electronic files are stored. Without limiting the term "control," a document is deemed to be within one's control if that person has any ownership, possession, or custody of the document, or the right to secure the document or a copy thereof.

2. **Documents should be produced within the time period stated in the attached subpoena. Documents may be produced either by delivery to the offices of SHELTON & VALADEZ, P.C., Attn: Robert A. Valadez, 600 Navarro, Suite 500, San Antonio, TX 78205, or they may be delivered electronically to jeggum@fgppr.com. Although electronic delivery is not required, it is encouraged and requested. If you would like us to send you a link to allow you to upload documents from your computer, please contact John Eggum at 312-863-5053 or jeggum@fgppr.com and we will do so. You may alternatively choose to upload responsive documents to a file-sharing site of your choice (at your own expense), and provide us a link to those documents. We suggest sharefile.com or dropbox.com.**

3. All requests should be interpreted in a manner consistent with Rule 45 of the Federal Rules of Civil Procedure. For the avoidance of doubt, if Rule 45 and otherwise applicable law requires the production of a document, you must produce it. All requests are intended to be as broad and encompassing as Rule 45 allows, and you should therefore interpret each request with this understanding.

4. **For all electronically stored information ("ESI"), please produce as follows:**

   a. We are happy to meet and confer regarding the format of ESI production, either generally, or for particular files or types of files.

   b. For emails, please do not simply copy or "drag and drop" emails out of Microsoft Outlook and into a folder on your computer's file manager, because

2

this changes the subject line, date details, and other metadata most of the time. The easiest way to address email production is to put responsive emails in a folder in the Outlook program, and then create a "PST file." Here are instructions from Microsoft: https://support.office.com/en-us/article/back-up-your-email-e5845b0b-1aeb-424f-924c-aa1c33b18833.

c.  For word documents, PDFs, and other native files, you may produce them natively (i.e., in their normal and customary format).

d.  Another option is to produce documents in TIFF image format, unless the corresponding file cannot be converted to or is not reasonably viewable in such format, in which case it should be produced in native format, including for spreadsheets and PowerPoint documents. ESI produced in the form of TIFF images should be accompanied by a corresponding "image load file" and "OCR text file." Whether produced as a TIFF image or in native format, ESI provided in response to these requests should include all available metadata fields.

5.      Regardless of the tense employed, all verbs shall be read as applying to the past, present and future as is necessary to make the request more, rather than less, inclusive.  The connectives "and", "or", and "and/or" are used herein as terms of inclusion and not of exclusion. Additionally, the singular includes the plural and vice versa.  After applying these rules, if you contend there is an ambiguity in a request, set forth the matter deemed "ambiguous" and respond to the request by choosing the construction that you believe to be aligned with the principles of good faith and full and complete disclosure.

6.      In the event you contend, after exercising due diligence to secure the documents specified below, that you are unable to answer or respond in full to any demand for production,

state all information regarding your efforts to procure, and your inability to produce, the requested documents. Relatedly, if any requested document was but is no longer in your possession, custody, or control (or is otherwise no longer in existence or available to you), identify that document with specificity.

7.      All documents are to be produced as they are kept in the usual course of business so that the party propounding these Requests can ascertain the file in which they are located, the relative order in such files, and how the files are maintained.

8.      Each page of the documents produced in response to these Requests should be marked with a unique document identification number.

9.      You are instructed to fully preserve, protect and keep intact all computer data in their possessions or under your control that relates in any way to the documents sought by the Requests. Failure to follow this instruction may result in spoliation of evidence charges against those responsible. You should not destroy, conceal, or alter any paper documents or electronic files and other data generated by or stored on Your computers, data systems, storage media (*e.g.,* main frames, internal and external hard drives, jump drives, floppy discs, back-up tapes, etc.), or any other electronic date, such as voice mail. You should also take affirmative steps to prevent anyone with access to relevant date, systems, and archives (whether an employee, agent, officer, director, consultant, contractor, affiliate, or other) from seeking to modify, destroy or hide electronically stored information ("ESI") network or local hard drives and on other media or devices (such as by deleting or overwriting files, using data shredding and overwriting applications, defragmentation, re-imaging, damaging or replacing media, encryption, compression, steganography or the like). Your failure to comply with this request could result in an array of sanctions being imposed by the Court for spoliation of evidence or potential evidence.

4

10.     To the extent that you refuse to produce any document because you claim a privilege, whether work-product, attorney-client or other, produce a redacted version of the document unless you contend the entirety of the document is privileged. For all documents that are either withheld or produced in a redacted form, produce a privilege log.

11.     To the extent that You consider any of these requests objectionable, respond to so much of each request and each part thereof as is not objectionable and state that part of each such request as to which You raise objection and each ground for such objection.

12.     If no documents exist that are responsive to a request, a written statement to that effect shall be provided at the time of production.

13.     If any document responsive to these requests has been lost or destroyed, for each document state:

> a.   The reasons why or circumstances under which the document was lost or destroyed;
>
> b.   The person who, or entity which, had possession or custody of the document;
>
> c.   All known facts regarding the substance of the document;
>
> d.   The author, signatory, addressee(s), recipient(s), date, and subject of the document; and
>
> e.   What efforts You have made to locate the document or a copy thereof.

## DEFINITIONS

The following definitions apply to the demands for production contained herein:

5

1.      The words "Ridout", "You", and "Your" mean Ridout, Barrett & Co., P.C., as well as its parent companies, subsidiaries, and affiliates, as well as all directors, officers, employees, independent contractors, advisors, consultants, representatives, agents, and other persons controlled by, or acting on behalf of, or acting at the direction of, any of the foregoing entities.

2.      The word "all" means "any and all"; the word "any" means "any and all"; and the word "including" means "including without limitation."

3.      The words "document" or "documents" have the broadest meaning accorded it under applicable law. It means the original and any copy, regardless of its origin and location and whether physical or digital, of any record, writing, and other tangible thing containing written or graphic matter, whether typed, printed, recorded, handwritten, photographed, scanned, photocopied, however produced or reproduced, including but not limited to the following: Microsoft Word files, Microsoft Excel files, PDF files, Microsoft PowerPoint files, Microsoft Outlook files, electronic mail/e-mail (including all attachments), other e-mail communications/transmissions/records, accounting journals/ledgers/reports (including information in any software, website, cloud or local system or application or program), advertisements, affidavits, agendas, agreements or proposed agreements (including drafts, proposals and any and all exhibits thereto), analyses, appraisals, audio tapes, bank records (including check copies), bills, books, brochures, budgets, certificates, charts, risk assessments, communications, diaries, electronic records, files, films, financial calculations and projections, financial statements, graphs, graphics, forecasts, handwritten notes or comments however produced or reproduced, indexes, inspection records/notes/memoranda, instructions, interoffice and intraoffice emails and other communications, invoices, letters, laboratory and engineering reports, ledgers, lists, reports, logbooks, manuals, memoranda, minutes, minutes of meetings,

6

models, mortgages, newspaper or magazine articles, notations or records of meetings, notes, promissory notes, notebooks, notices of wire transfer of funds, opinions or reports of consultants, outlines, papers, periodicals, photographs, pictures, plans, press releases, proposals, publications, purchase orders, raw and refined data, receipts, recommendations, records, recordings, payment records, reports, reports/summaries/results of investigations, resolutions, schedules, shipping papers, software, specifications, speeches, spreadsheets, summaries, reports/summaries/results of interviews, surveys, tape recordings, video, video recordings, tax records, transcripts, voicemails, worksheets, and any and all other papers or drafts similar to any of the foregoing. Data stored, maintained or organized electronically, magnetically or through the use of computer equipment, computer memory, computer memory disk, or memory media, whether or not printed, and any information which is accessible by reason of any computer or other device, is included within this definition.

4.      The word "communication" means every matter of transmitting, transferring, exchanging or sharing information, facts, opinions or thoughts in any form, whether oral, electronic, or written utterance, notation or statement of any nature whatsoever, by or whomsoever made, including, but not limited to, correspondence, conversations, dialogues, discussions, interviews, consultations, agreements, letter, note, mail, telephone, facsimile transmission, telex, telecopy, email and any other understanding(s) between or among two or more persons (as the term person is defined herein).

5.      The word "person" means any natural person, corporation, partnership, company (including but not limited to limited liability company), sole proprietorship, group, association, trust, institute, joint venture, firm, governmental body, or other legal or business entity, whether

privately or publicly owned or controlled, for profit or not-for-profit, or partially or fully government owned or controlled, and any representative or employee of the foregoing.

6.     "Complaint" means the Complaint filed by CNA in this action, case number 5:20-cv-00768.

7.     "Underlying Complaint" means the document appended as Exhibit A to the Complaint, which was filed in this Court as case number 5:17-cv-00807.

8.     "Underlying Lawsuit" means case number 5:17-cv-00807.

9.     "Judgment" means the Judgment appended as Exhibit B to the Complaint, which is also identifiable as the Judgment that was entered by this Court in the Underlying Lawsuit.

10.    "Ruben Villarreal" or "Mr. Villarreal" means the individual whose deposition transcript is attached as Exhibit C to the Complaint.

11.    The "Villarreal Transcript" means the document attached to the Complaint as Exhibit C.

12.    "Blackhawk" means Blackhawk Ventures, LLC, which is also identifiable as the defendant in the Underlying Complaint, the judgment debtor of the Judgment, and the entity discussed by Mr. Villarreal in his testimony set out in the Villarreal Transcript.  Blackhawk Ventures, LLC is also known as Blackhawk Constructors.  This term includes all directors, officers, employees, independent contractors, accountants, advisors, consultants, representatives, agents, and other persons controlled by, or acting on behalf of, or acting at the direction of this entity.

13.    "Mapco" means Mapco Inc. and its affiliates, including without limitation Mapco Holdings, Inc. This term includes all directors, officers, employees, independent contractors,

8

accountants, advisors, consultants, representatives, agents, and other persons controlled by, or acting on behalf of, or acting at the direction of these entities.

14.    "Blackhawk Project" means any construction project, job, and/or contract in which Blackhawk was involved, in any way, manner, capacity or role.

15.    "Person/Entity List" means the following persons / entities / partnerships / associations, and their affiliates:

        Blackhawk Ventures, LLC d/b/a Blackhawk Constructors

        Core Logistics Services, LLC d/b/a Core Constructors

        Homeland Construction, LLC

        MAPCO, Inc.

        MBH Ventures, LLC

        WPS Group, LLC d/b/a Federal Management Solutions

        James Brian Taylor

        Fameeda Taylor

        Michael A. Padron

        Padron Enterprises, Inc.

        Raymond Jenkins

        Wendy Lee Jenkins

        Blackhawk/JAMCO JV2

        Blackhawk-JAMCO a SDVOB Joint Venture, LLC

        Ruben M. Villarreal

        Manuela Villarreal

        Jamco Ventures, LLC

        Team Jama

        MILCON Construction, Inc.

        Promasters Construction, Inc.

        Maria D. Padron n/k/a Maria Bass

        Laura Wibracht

        Michael Wibracht

        Joseph Alex Muniz

Cinco Spirits, LLC

Blackhawk-Milcon, A Joint Venture

Steven Wibracht

Federal Management Solutions

16.     "Blackhawk Joint Venture" means any joint ventures in which Blackhawk was involved or Villarreal was involved, regardless of form and regardless of whether an entity was formed to facilitate that joint venture.  This term includes, without limitation, any joint venture involving anyone on the Person/Entity List.

NOTE: Headings have been included below for convenience.  The headings should not be used to narrow, restrict, or confine the below requests or your responses to the below requests.

## REQUESTS FOR PRODUCTION

### BLACKHAWK REVENUE

1.     Attached as Exhibit A are redacted portions of tax return documents relating to Blackhawk, showing:

2017 Gross Receipts exceeding $7 million

2016 Gross Receipts exceeding $10 million

2015 Gross Receipts exceeding $36 million

2014 Gross Receipts exceeding $45 million

If you have any documents and communications pertaining to where that money was derived from and where it was deposited or transferred to, and/or the accounting for any of that money, produce them.

**DEPARTMENT OF JUSTICE AND LAW ENFORCEMENT**

2.      Produce all documents and communications sent to or received from the United States Department of Justice, which relate in any way to anyone on the Person/Entity List.

3.      Produce all documents and communications sent to or received from any law enforcement authority or governmental authority with the power to bring any criminal charge of any kind, which relate in any way to anyone on the Person/Entity List.

**BLACKHAWK**

4.      Produce all documents and communications sent to or received from Blackhawk.

5.      Produce all documents and communications that relate in any way to Blackhawk.

6.      Produce all documents and communications sent to or received from any Blackhawk Joint Venture.

7.      Produce all documents and communications that relate in any way to Blackhawk Joint Venture.

**FEDERAL MANAGEMENT SOLUTIONS/WPS GROUP**

8.      Produce all documents and communications sent to or received from Federal Management Solutions.  This includes without limitation any person or entity doing business as Federal Management Solutions.

9.      Produce all documents and communications that relate in any way to Federal Management Solutions.  This includes without limitation any person or entity doing business as Federal Management Solutions.

10.     Produce all documents and communications sent to or received from WPS Group, LLC.

11

11.     Produce all documents and communications that relate in any way to WPS Group, LLC

**MICHAEL WIBRACHT**

12.     Produce all documents and communications sent to or received from Michael Wibracht.

13.     Produce all documents and communications that relate in any way to Michael Wibracht.

**STEVEN WIBRACHT**

14.     Produce all documents and communications sent to or received from Steven Wibracht

15.     Produce all documents and communications that relate in any way to Steven Wibracht

**VILLARREAL**

16.     Produce all documents and communications sent to or received from Ruben Villarreal.

17.     Produce all documents and communications that relate in any way to Ruben Villarreal.

**MAPCO.**

18.     Produce all documents and communications sent to or received from MapCo.

19.     Produce all documents and communications that relate in any way to MapCo.

**OTHER BLACKHAWK RELATED**

20.     Produce all documents and communications that relate in any way to revenue or compensation derived from any source that is related in any way to Blackhawk.

21.    Produce all documents and communications that relate in any way to revenue or compensation derived from any source that is related in any way to anyone that has ever managed Blackhawk.

22.    Produce all documents and communications that relate in any way to revenue or compensation derived from any source that is related in any way to anyone that has ever had an ownership interest in Blackhawk.

23.    Produce all documents and communications that relate in any way to expenditures, expenses, or costs paid to or owed to any source that is related in any way to Blackhawk.

24.    Produce all documents and communications that relate in any way to the ownership, ownership interests, or management of Blackhawk.

25.    Produce all documents and communications regarding capitalization for Blackhawk, including without limitation the initial capital for Blackhawk, operating capital for Blackhawk, additional capital for Blackhawk, withdrawing capital from Blackhawk, or otherwise.

26.    Produce all documents relating to transfers to or from Blackhawk, or which were made on behalf of Blackhawk or for the benefit of Blackhawk, or which relate to Blackhawk.

27.    Provide all other financial statement, reports, and documents, that show or include revenue and/or income derived from Blackhawk or relating to Blackhawk or Blackhawk projects.

28.    Provide all payroll information relating to Blackhawk employees.

29.    Provide all payroll information relating to Villarreal.

30.    Provide all payroll information relating to anyone on the Person/Entity List.

31.    Provide all W-2s and 1099s in your possession that relate to Blackhawk in any way.

13

32.     Produce all bank statements that show transfers to or from Blackhawk.

33.     Produce copies of all checks that show transfers to or from Blackhawk.

34.     Produce all  bank statements that show transfers relating to Blackhawk projects.

35.     Produce copies of all checks that show transfers relating to Blackhawk projects.

36.     Produce any and all documents in your possession, custody or control which relate in any way to distributions of any kind made to any Blackhawk insider (including any owner, interest-holder, shareholder, or other stakeholder) in the period 1/1/2014 to the present, including without limitation distributions that you consider or which could be reasonably classified as salary, wages, return of capital, repayment of loans, repayment of capital, dividends, cash advances, advances, loans, draws, investments, premiums, earned income, income, revenues, or proceeds.

## ORGANIZATIONAL AND CORPORATE DOCUMENTS

37.     Produce all organizational agreements and other documents, all shareholder agreements and other documents, all member agreements and other documents, all management agreements and other documents, all corporate/company governance agreements and other documents, relating in any way to any of the following:

       a.  Federal Management Solutions;

       b.  WPS Group, LLC;

       c.  MapCo;

       d.  Blackhawk;

       e.  any person, entity, or group that has ever done business as Federal Management Solutions; or

       f.  anyone on the Person/Entity List.

14

**LOAN DOCUMENTS AND NOTES**

38.     Produce all loan documents relating in any way to Blackhawk or Blackhawk Projects.

39.     Produce all promissory notes relating in any way to Blackhawk or Blackhawk Projects.

Dated: January 18, 2021                    Respectfully submitted,

                                            /s/ John Eggum
                                           John Eggum (Admitted Pro Hac Vice)
                                           FORAN GLENNON PALANDECH PONZI & RUDLOFF PC
                                           222 N. LaSalle Street, Suite 1400
                                           Chicago, IL 60601
                                           Tel:    (312) 863-5000
                                           Email: jeggum@fgppr.com

                                           - and -

                                           Robert A. Valadez
                                           SHELTON & VALADEZ, P.C.
                                           600 Navarro, Suite 500
                                           San Antonio, TX 78205
                                           (210)349-0515 (office)
                                           rvaladez@shelton-valadez.com

# Exhibit A

# Exhibit 1

Form **1120S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation
► Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
► Go to *www.irs.gov/Form1120S* for instructions and the latest information.

OMB No. 1545-0123

**2017**

For calendar year 2017 or tax year beginning _____ , ending _____

| | | | |
|---|---|---|---|
| **A** S election effective date **01/01/10** | **TYPE** | Name **BLACKHAWK VENTURES, LLC** | **D** Employer Identification number ████ **1063** |
| **B** Business activity code number (see instructions) **236200** | **OR** | Number, street, and room or suite no. If a P.O. box, see instructions. **427 W CEVALLOS STE B** | **E** Date Incorporated **04/16/2004** |
| **C** Check if Sch. M-3 attached ☐ | **PRINT** | City or town, state or province, country, and ZIP or foreign postal code **SAN ANTONIO          TX  78204** | **F** Total assets (see instructions) $ **1,114,409** |

**G** Is the corporation electing to be an S corporation beginning with this tax year?   ☐ Yes  ☒ No   If "Yes," attach Form 2553 if not already filed
**H** Check if: **(1)** ☐ Final return  **(2)** ☐ Name change  **(3)** ☐ Address change  **(4)** ☐ Amended return  **(5)** ☐ S election termination or revocation
**I** Enter the number of shareholders who were shareholders during any part of the tax year ............................ ► **1**

**Caution.** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

**Income**

| | | | | |
|---|---|---|---|---|
| **1a** | Gross receipts or sales | **1a** | 7,053,153 | |
| **b** | Returns and allowances | **1b** | | |
| **c** | Balance. Subtract line 1b from line 1a | | **1c** | 7,053,153 |
| **2** | Cost of goods sold (attach Form 1125-A) | | **2** | 4,304,009 |
| **3** | Gross profit. Subtract line 2 from line 1c | | **3** | 2,749,144 |
| **4** | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | | **4** | |
| **5** | Other income (loss) (see instructions—attach statement)   SEE STMT 1,2 | | **5** | 12,191 |
| **6** | Total income (loss). Add lines 3 through 5 ► | | **6** | 2,761,335 |

**Deductions** (see instructions for limitations)

| | | | |
|---|---|---|---|
| **7** | Compensation of officers (see instructions–attach Form 1125-E) | **7** | |
| **8** | Salaries and wages (less employment credits) | **8** | 82,434 |
| **9** | Repairs and maintenance | **9** | 4,048 |
| **10** | Bad debts | **10** | 1,177 |
| **11** | Rents | **11** | |
| **12** | Taxes and licenses | **12** | 30,123 |
| **13** | Interest | **13** | 1,088 |
| **14** | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | **14** | 894 |
| **15** | Depletion (Do not deduct oil and gas depletion.) | **15** | |
| **16** | Advertising | **16** | |
| **17** | Pension, profit-sharing, etc., plans | **17** | 9,175 |
| **18** | Employee benefit programs | **18** | 3,142 |
| **19** | Other deductions (attach statement)   SEE STMT 3 | **19** | 353,089 |
| **20** | Total deductions. Add lines 7 through 19 ► | **20** | 485,170 |
| **21** | Ordinary business income (loss). Subtract line 20 from line 6 | **21** | 2,276,165 |

**Tax and Payments**

| | | | | |
|---|---|---|---|---|
| **22a** | Excess net passive income or LIFO recapture tax (see instructions) | **22a** | | |
| **b** | Tax from Schedule D (Form 1120S) | **22b** | | |
| **c** | Add lines 22a and 22b (see instructions for additional taxes) | | **22c** | |
| **23a** | 2017 estimated tax payments and 2016 overpayment credited to 2017 | **23a** | | |
| **b** | Tax deposited with Form 7004 | **23b** | | |
| **c** | Credit for federal tax paid on fuels (attach Form 4136) | **23c** | | |
| **d** | Add lines 23a through 23c | | **23d** | |
| **24** | Estimated tax penalty (see instructions). Check if Form 2220 is attached ► ☐ | | **24** | |
| **25** | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | | **25** | |
| **26** | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | | **26** | |
| **27** | Enter amount from line 26 Credited to 2018 estimated tax ►          Refunded ► | | **27** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer **RUBEN VILLARREAL**          Date          Title **PRESIDENT**

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | |
|---|---|---|
| Print/Type preparer's name **MILTON G. BARRETT, CPA** | Preparer's signature | Date **09/12/18**   Check ☐ if self-employed   PTIN |
| Firm's name ► **RIDOUT, BARRETT & CO., P.C.** | | Firm's EIN ► ████**9624** |
| Firm's address ► **922 ISOM RD STE 100** | | |
| **SAN ANTONIO, TX          78216-4184** | | Phone no. **210-829-1793** |

For Paperwork Reduction Act Notice, see separate instructions.                    Form **1120S** (2017)

DAA

BLACKHAWK VENTURES, LLC 000453

# Exhibit 2

Form **1120S**

Department of the Treasury
Internal Revenue Service

## U.S. Income Tax Return for an S Corporation

▶ Do not file this form unless the corporation has filed or is
attaching Form 2553 to elect to be an S corporation.
▶ Information about Form 1120S and its separate instructions is at *www.irs.gov/form1120s.*

OMB No. 1545-0123

**2016**

For calendar year 2016 or tax year beginning _____ , ending _____

| | | | |
|---|---|---|---|
| **A** S election effective date 01/01/10 | TYPE | **Name** BLACKHAWK VENTURES, LLC | **D** Employer identification number ████ 1063 |
| **B** Business activity code number (see instructions) 236200 | OR | Number, street, and room or suite no. If a P.O. box, see instructions. 427 W CEVALLOS STE B | **E** Date incorporated 04/16/2004 |
| **C** Check if Sch. M-3 attached ☐ | PRINT | City or town, state or province, country, and ZIP or foreign postal code SAN ANTONIO        TX 78204 | **F** Total assets (see instructions) $ 1,433,812 |

**G** Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No  If "Yes," attach Form 2553 if not already filed

**H** Check if: **(1)** ☐ Final return  **(2)** ☐ Name change  **(3)** ☐ Address change  **(4)** ☐ Amended return  **(5)** ☐ S election termination or revocation

**I** Enter the number of shareholders who were shareholders during any part of the tax year ................ ▶ 1

**Caution.** Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

### Income

| | | | |
|---|---|---|---|
| **1a** | Gross receipts or sales | **1a** 10,897,231 | |
| **b** | Returns and allowances | **1b** | |
| **c** | Balance. Subtract line 1b from line 1a | **1c** | 10,897,231 |
| **2** | Cost of goods sold (attach Form 1125-A) | **2** | 11,273,118 |
| **3** | Gross profit. Subtract line 2 from line 1c | **3** | -375,887 |
| **4** | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | **4** | |
| **5** | Other income (loss) (see instructions—attach statement)   SEE STMT 1,2 | **5** | 4,792,102 |
| **6** | Total income (loss). Add lines 3 through 5 ................ ▶ | **6** | 4,416,215 |

### Deductions (see instructions for limitations)

| | | | |
|---|---|---|---|
| **7** | Compensation of officers (see instructions–attach Form 1125-E) | **7** | 53,550 |
| **8** | Salaries and wages (less employment credits) | **8** | 214,325 |
| **9** | Repairs and maintenance | **9** | 2,563 |
| **10** | Bad debts | **10** | 990,673 |
| **11** | Rents | **11** | 36,741 |
| **12** | Taxes and licenses | **12** | 40,590 |
| **13** | Interest | **13** | |
| **14** | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | **14** | 2,069 |
| **15** | Depletion (Do not deduct oil and gas depletion.) | **15** | |
| **16** | Advertising | **16** | |
| **17** | Pension, profit-sharing, etc., plans | **17** | 25,076 |
| **18** | Employee benefit programs | **18** | 321 |
| **19** | Other deductions (attach statement)   SEE STMT 3 | **19** | 553,676 |
| **20** | Total deductions. Add lines 7 through 19 ................ ▶ | **20** | 1,919,584 |
| **21** | Ordinary business income (loss). Subtract line 20 from line 6 ................ | **21** | 2,496,631 |

### Tax and Payments

| | | | |
|---|---|---|---|
| **22a** | Excess net passive income or LIFO recapture tax (see instructions) | **22a** | |
| **b** | Tax from Schedule D (Form 1120S) | **22b** | |
| **c** | Add lines 22a and 22b (see instructions for additional taxes) | **22c** | |
| **23a** | 2016 estimated tax payments and 2015 overpayment credited to 2016 | **23a** | |
| **b** | Tax deposited with Form 7004 | **23b** | |
| **c** | Credit for federal tax paid on fuels (attach Form 4136) | **23c** | |
| **d** | Add lines 23a through 23c | **23d** | |
| **24** | Estimated tax penalty (see instructions). Check if Form 2220 is attached ........ ▶ ☐ | **24** | |
| **25** | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed ........ | **25** | |
| **26** | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid ........ | **26** | |
| **27** | Enter amount from line 26 Credited to 2017 estimated tax ▶ _____   Refunded ▶ | **27** | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer   RUBEN VILLARREAL        Date _____   Title PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)?  ☒ Yes  ☐ No

**Paid Preparer Use Only**

| | | | |
|---|---|---|---|
| Print/Type preparer's name MILTON G. BARRETT, CPA | Preparer's signature | Date 09/15/17 | Check ☐ if self-employed  PTIN ████9624 |
| Firm's name ▶ RIDOUT, BARRETT & CO., P.C. | | | Firm's EIN ▶ ████ |
| Firm's address ▶ 922 ISOM RD STE 100 SAN ANTONIO, TX    78216-4184 | | | Phone no. 210-829-1793 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1120S** (2016)

DAA

# Exhibit 3

| Form **1120S** | | **U.S. Income Tax Return for an S Corporation** | | OMB No. 1545-0123 |
|---|---|---|---|---|
| Department of the Treasury<br>Internal Revenue Service | | ▶ Do not file this form unless the corporation has filed or is<br>attaching Form 2553 to elect to be an S corporation.<br>▶ Information about Form 1120S and its separate instructions is at www.irs.gov/form1120s. | | **2015** |

For calendar year 2015 or tax year beginning , ending

| A | S election effective date<br>**01/01/10** | TYPE | Name<br>**BLACKHAWK VENTURES, LLC** | D | Employer Identification number |
|---|---|---|---|---|---|
| B | Business activity code<br>number (see instructions)<br>**236200** | OR | Number, street, and room or suite no. If a P.O. box, see instructions.<br>**427 W CEVALLOS ST, STE B** | E | **1063**<br>Date incorporated<br>**04/16/2004** |
| C | Check if Sch. M-3<br>attached ☐ | PRINT | City or town, state or province, country, and ZIP or foreign postal code<br>**SAN ANTONIO          TX  78204** | F | Total assets (see instructions)<br>$ **5,721,612** |

G  Is the corporation electing to be an S corporation beginning with this tax year?  ☐ Yes  ☒ No  If "Yes," attach Form 2553 if not already filed
H  Check if: **(1)** ☐ Final return  **(2)** ☐ Name change  **(3)** ☐ Address change  **(4)** ☐ Amended return  **(5)** ☐ S election termination or revocation
I  Enter the number of shareholders who were shareholders during any part of the tax year  ▶ **1**

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | | |
|---|---|---|---|---|
| **Income** | 1a | Gross receipts or sales | 1a **36,709,260** | |
| | b | Returns and allowances | 1b | |
| | c | Balance. Subtract line 1b from line 1a | 1c | **36,709,260** |
| | 2 | Cost of goods sold (attach Form 1125-A) | 2 | **34,758,588** |
| | 3 | Gross profit. Subtract line 2 from line 1c | 3 | **1,950,672** |
| | 4 | Net gain (loss) from Form 4797, line 17 (attach Form 4797) | 4 | |
| | 5 | Other income (loss) (see instructions—attach statement)   SEE STMT 1,2 | 5 | **625,783** |
| | 6 | Total income (loss). Add lines 3 through 5 ▶ | 6 | **2,576,455** |
| **Deductions (see instructions for limitations)** | 7 | Compensation of officers (see instructions–attach Form 1125-E) | 7 | **106,712** |
| | 8 | Salaries and wages (less employment credits) | 8 | **481,546** |
| | 9 | Repairs and maintenance | 9 | **5,681** |
| | 10 | Bad debts | 10 | |
| | 11 | Rents | 11 | **54,395** |
| | 12 | Taxes and licenses | 12 | **149,166** |
| | 13 | Interest | 13 | |
| | 14 | Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | 14 | **9,180** |
| | 15 | Depletion (Do not deduct oil and gas depletion.) | 15 | |
| | 16 | Advertising | 16 | |
| | 17 | Pension, profit-sharing, etc., plans | 17 | **37,302** |
| | 18 | Employee benefit programs | 18 | **2,312** |
| | 19 | Other deductions (attach statement)   SEE STMT 3 | 19 | **495,737** |
| | 20 | Total deductions. Add lines 7 through 19 ▶ | 20 | **1,342,031** |
| | 21 | Ordinary business income (loss). Subtract line 20 from line 6 | 21 | **1,234,424** |
| **Tax and Payments** | 22a | Excess net passive income or LIFO recapture tax (see instructions) | 22a | |
| | b | Tax from Schedule D (Form 1120S) | 22b | |
| | c | Add lines 22a and 22b (see instructions for additional taxes) | 22c | |
| | 23a | 2015 estimated tax payments and 2014 overpayment credited to 2015 | 23a | |
| | b | Tax deposited with Form 7004 | 23b | |
| | c | Credit for federal tax paid on fuels (attach Form 4136) | 23c | |
| | d | Add lines 23a through 23c | 23d | |
| | 24 | Estimated tax penalty (see instructions). Check if Form 2220 is attached ▶ ☐ | 24 | |
| | 25 | Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | 25 | |
| | 26 | Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | 26 | |
| | 27 | Enter amount from line 26 Credited to 2016 estimated tax ▶        Refunded ▶ | 27 | |

| Sign Here | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge. | | May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No |
|---|---|---|---|
| | Signature of officer  **RUBEN VILLARREAL**          Date | Title  **PRESIDENT** | |

| Paid Preparer Use Only | Print/Type preparer's name<br>**MILTON G. BARRETT, CPA** | Preparer's signature | Date<br>**08/22/16** | Check ☐ if<br>self-employed | PTIN<br>**9624** |
|---|---|---|---|---|---|
| | Firm's name ▶ **RIDOUT, BARRETT & CO., P.C.** | | | Firm's EIN ▶ | |
| | Firm's address ▶ **922 ISOM RD STE 100**<br>**SAN ANTONIO, TX          78216-4184** | | | Phone no.  **210-829-1793** | |

For Paperwork Reduction Act Notice, see separate instructions.                          Form **1120S** (2015)

DAA

BLACKHAWK VENTURES, LLC 000366

Exhibit 4

# Form 1120S

Department of the Treasury
Internal Revenue Service

**U.S. Income Tax Return for an S Corporation**
► Do not file this form unless the corporation has filed or is attaching Form 2553 to elect to be an S corporation.
► Information about Form 1120S and its separate instructions is at www.irs.gov/form1120s.

OMB No. 1545-0123

**2014**

For calendar year 2014 or tax year beginning _____ , ending _____

| | | | |
|---|---|---|---|
| **A** S election effective date **01/01/10** | **TYPE** | **Name** BLACKHAWK VENTURES, LLC | **D** Employer identification number **L1063** |
| **B** Business activity code number (see instructions) **236200** | **OR** | Number, street, and room or suite no. If a P.O. box, see instructions. 427 W CEVALLOS ST, STE B | **E** Date incorporated **04/16/2004** |
| **C** Check if Sch. M-3 attached ☐ | **PRINT** | City or town, state or province, country, and ZIP or foreign postal code SAN ANTONIO    TX 78204 | **F** Total assets (see instructions) **$ 7,226,875** |

**G** Is the corporation electing to be an S corporation beginning with this tax year? ☐ Yes ☒ No  If "Yes," attach Form 2553 if not already filed
**H** Check if: **(1)** ☐ Final return  **(2)** ☐ Name change  **(3)** ☒ Address change  **(4)** ☐ Amended return  **(5)** ☐ S election termination or revocation
**I** Enter the number of shareholders who were shareholders during any part of the tax year ............................. ► **1**

Caution. Include only trade or business income and expenses on lines 1a through 21. See the instructions for more information.

| | | | |
|---|---|---|---|
| **Income** | **1a** Gross receipts or sales | **1a** 45,875,934 | |
| | **b** Returns and allowances | **1b** | |
| | **c** Balance. Subtract line 1b from line 1a | **1c** | 45,875,934 |
| | **2** Cost of goods sold (attach Form 1125-A) | **2** | 44,017,447 |
| | **3** Gross profit. Subtract line 2 from line 1c | **3** | 1,858,487 |
| | **4** Net gain (loss) from Form 4797, line 17 (attach Form 4797) | **4** | |
| | **5** Other income (loss) (see instructions—attach statement)   SEE STMT 1,2 | **5** | 18,456 |
| | **6** Total income (loss). Add lines 3 through 5 ............................. ► | **6** | 1,876,943 |
| **Deductions (see instructions for limitations)** | **7** Compensation of officers (see instructions—attach Form 1125-E) | **7** | 108,012 |
| | **8** Salaries and wages (less employment credits) | **8** | 467,295 |
| | **9** Repairs and maintenance | **9** | 8,023 |
| | **10** Bad debts | **10** | |
| | **11** Rents | **11** | 88,467 |
| | **12** Taxes and licenses | **12** | 65,062 |
| | **13** Interest | **13** | 836 |
| | **14** Depreciation not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | **14** | 21,004 |
| | **15** Depletion (Do not deduct oil and gas depletion.) | **15** | |
| | **16** Advertising | **16** | |
| | **17** Pension, profit-sharing, etc., plans | **17** | 37,499 |
| | **18** Employee benefit programs | **18** | 1,005 |
| | **19** Other deductions (attach statement)   SEE STMT 3 | **19** | 1,219,934 |
| | **20** Total deductions. Add lines 7 through 19 ............................. ► | **20** | 2,017,137 |
| | **21** Ordinary business income (loss). Subtract line 20 from line 6 | **21** | -140,194 |
| **Tax and Payments** | **22a** Excess net passive income or LIFO recapture tax (see instructions) | **22a** | |
| | **b** Tax from Schedule D (Form 1120S) | **22b** | |
| | **c** Add lines 22a and 22b (see instructions for additional taxes) | **22c** | |
| | **23a** 2014 estimated tax payments and 2013 overpayment credited to 2014 | **23a** | |
| | **b** Tax deposited with Form 7004 | **23b** | |
| | **c** Credit for federal tax paid on fuels (attach Form 4136) | **23c** | |
| | **d** Add lines 23a through 23c | **23d** | |
| | **24** Estimated tax penalty (see instructions). Check if Form 2220 is attached ............ ► ☐ | **24** | |
| | **25** Amount owed. If line 23d is smaller than the total of lines 22c and 24, enter amount owed | **25** | |
| | **26** Overpayment. If line 23d is larger than the total of lines 22c and 24, enter amount overpaid | **26** | |
| | **27** Enter amount from line 26 Credited to 2015 estimated tax ►   Refunded ► | **27** | |

**Sign Here**
Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer   RUBEN VILLARREAL   Date _____   Title PRESIDENT

May the IRS discuss this return with the preparer shown below (see instructions)? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | |
|---|---|---|
| Print/Type preparer's name MILTON G. BARRETT, CPA | Preparer's signature   CH | Date 8/11/15   Check ☐ if self-employed   PTIN |
| Firm's name ► RIDOUT, BARRETT & CO., P.C. | | Firm's EIN ► L9624 |
| Firm's address ► 10843 GULFDALE    SAN ANTONIO, TX    78216 | | Phone no. 210-829-1793 |

For Paperwork Reduction Act Notice, see separate instructions.

Form **1120S** (2014)

DAA

# Exhibit

# Complaint (Complaint Exhibits Omitted)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, AND VALLEY FORGE INSURANCE COMPANY, | ) ) ) ) | Case No: ___5:20-cv-00768___ |
| | ) | |
| Plaintiff, | ) | [Related Case: 5:17-cv-00807-FB] |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL MANAGEMENT SOLUTIONS, MICHAEL WIEBRACHT AND STEVEN WIEBRACHT (individually and doing business as Federal Management Solutions), WPS GROUP, LLC d/b/a Federal Management Solutions, and BLACKHAWK VENTURES, LLC, | ) ) ) ) ) ) ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) ) | |

**COMPLAINT TO AVOID FRAUDULENT TRANSERS AND FOR OTHER RELIEF**

NOW COMES Continental Casualty Company, National Fire Insurance Company of Hartford, and Valley Forge Insurance Company (collectively, "CNA"), by and through its undersigned counsel, and for its Complaint against Federal Management Solutions, Michael Wiebracht and Steven Wiebracht, individually and doing business as Federal Management Solutions, WPS Group, LLC d/b/a Federal Management Solutions, and Blackhawk Ventures, LLC ("Blackhawk Ventures"), states as follows:

**NATURE OF THE ACTION**

1.     CNA holds a judgment entered by this Court on May 31, 2018, in the amount of $97,545.74, in case number 5:17-cv-00807. With post-judgment interest, the amount due to CNA as of the filing of this case is not less than $102,021.49. This judgment relates to unpaid insurance premiums incurred and owed by Blackhawk Ventures in the ordinary course of its construction

1

industry business activities. During the post-judgment deposition of Ruben Villarreal, a 70-year-old senior citizen and disabled military veteran that is the nominal President and Owner of Blackhawk Ventures, Mr. Villarreal disclosed that assets of Blackhawk Ventures were regularly and routinely transferred out of the company under the guise of a "management agreement" with Federal Management Solutions (an agreement he has never seen), leaving insufficient assets to pay for the Blackhawk Ventures' ordinary business expenses, such as the insurance premiums due to CNA. Based on Mr. Villarreal's testimony, a purpose of the management agreement was to permit persons that were not disabled military veterans to have beneficial (but not legal) ownership of Blackhawk Ventures, so they could capitalize on Mr. Villarreal's status as a disabled veteran, to obtain certain benefits available to disabled veterans under applicable law, including under programs administered by the United States Small Business Administration. As explained below, this scheme prejudiced CNA, and gives rise to the claims for relief set forth herein.

## PROCEDURAL BACKGROUND, PARTIES, AND JURISDICTION

2.     Continental Casualty Company, National Fire Insurance Company, and Valley Forge Insurance Company are Illinois corporations with a principal place of business at 151 N. Franklin, Chicago, IL 60606, which are authorized to do business in Texas.

3.     Blackhawk Ventures is a Texas limited liability company that had its principal place of business in San Antonio, Texas.

4.     CNA previously commenced a lawsuit against Blackhawk Ventures and obtained a judgment against Blackhawk Ventures.

5.     A true and correct copy of CNA's Complaint against Blackhawk Ventures, the factual allegations of which are incorporated herein by reference, is attached as ***Exhibit A***.

2

6.      A true and correct copy of the judgment issued by this Court against Blackhawk Ventures, which is incorporated herein by reference, is attached as ***Exhibit B***.

7.      Michael Wiebracht is, upon information and belief, an individual that resides in and/or regularly conducts business in San Antonio, Texas.

8.      Steven Wiebracht is, upon information and belief, an individual that resides in and/or regularly conducts business in San Antonio, Texas.

9.      Federal Management Solutions was not, upon information and belief, an entity incorporated under the laws of any state prior to September 30, 2010. Rather, Michael Wiebracht and/or Steven Wiebracht were, upon information and belief, doing business as Federal Management Solutions until at least September 30, 2010.

10.      WPS Group, LLC is a Texas limited liability company that has a registered business address of 421 W. Cevallos, San Antonio, Texas 78204. As of September 30, 2010, it was registered to do business as Federal Management Solutions. The Texas Secretary of State records disclose it is managed by Michael Padron, 113 South Tower Rd., San Antonio, Texas 78232.

11.      It is unknown whether one or more persons continued doing business as Federal Management Solutions after WPS Group, LLC began using the assumed name "Federal Management Solutions."

12.      In this Complaint, "Federal Management Solutions" means, collectively and in the alternative, Michael and Steven Wiebracht doing business as Federal Management Solutions, and WPS Group, LLC doing business as Federal Management Solutions.

13.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), based on diversity of citizenship, and because the amount in controversy exceeds $75,000.

3

14. Venue is proper pursuant to 28 U.S.C. § 1391(b), including based on the defendants' residency.

## FACTUAL BACKGROUND

15. Records of the Texas Secretary of State show that Blackhawk Ventures was formed on April 16, 2004.

16. Mr. Villarreal was not an incorporator or organizer of Blackhawk Ventures. He has testified that he became the President and Owner of Blackhawk Ventures around 2006-2007 when he was approached by the leadership of Federal Management Solutions "to take over the ownership of th[e] company because the company needed to be - - at least the way it was explained to me at the time was that it needed to be headed by a veteran, a service disabled veteran."

17. A true and correct copy of the transcript of Mr. Villarreal's testimony is attached as *Exhibit C*.

18. Prior to the time he was approached by Federal Management Solutions, Mr. Villarreal was a construction superintendent at a company call Mapco. He had no ownership interest in that entity. Federal Management Solutions approached him with an offer – for no financial investment or purchase price, become the President and Owner of Blackhawk Ventures.

19. Mr. Villarreal has explained the reason for this offer as follows. Prior to his association, Blackhawk was owned by a person that was a disabled military veteran. When that person moved out of state, the United States Small Business Administration raised an issue with this person living outside the state in which Blackhawk Ventures was doing business. Defendant Michael Wiebracht, holding himself out as the Chief Operating Officer of Federal Management Solutions, then "interviewed" Mr. Villarreal. Michael Wiebracht and Federal Management Solutions offered Mr. Villarreal a job on condition that he "meet certain criteria."

4

20.     The criteria Mr. Villarreal had to meet were establishing himself as a service disabled veteran.

21.     Mr. Villarreal was <u>not</u> classified as a service disable veteran at the time of the interview. He was "just a standard veteran," in his words.  Michael Wiebracht and Federal Management Solutions offered to make Mr. Villarreal the President and Owner of Blackhawk Ventures if he approached the military (specifically the Navy, of which Mr. Villarrreal was a 20-year veteran), sit through a series of physical examinations for the deficiencies that were deemed service related, and once that was established, get United States Small Business Administration approval as a service disabled veteran.

22.     Mr. Villareal did what Michael Wiebracht and Federal Management Solutions asked, and obtained service disabled veteran status and United States Small Business Administration approval.  Mr. Villarreal explained that once the United States Small Business Administration acknowledged his disabilities, ownership of Blackhawk Ventures partially passed to him.

23.     At the time Mr. Villarreal became an owner of Blackhawk Ventures, there were three other owners.  Within a few months, however, the United States Small Business Administration informed Blackhawk Ventures that to receive the benefits available to service disabled veterans, Mr. Villarreal had to be the sole owner. In response, the three other owners transferred their ownership interests to Mr. Villarreal, and he became the sole owner of Blackhawk Ventures, at least on paper.

24.     Although he was the sole "President and Owner" of Blackhawk Ventures, Mr. Villarreal did not make decisions that would be typical and customary for the President and Owner of a company.  He did not make decisions with respect to purchasing insurance for

5

Blackhawk Ventures. That was done by Federal Management Solutions. Similarly, Federal Management Solutions provided all the employees (office manager, construction superintendent, and receptionist), and paid those people's salaries. Federal Management Solutions also provided all the labor for the construction jobs that were bid on and awarded to Blackhawk Ventures. Federal Management Solutions would also tell the office manager it provided what bills to pay with revenue that was nominally Blackhawk's revenue.

25. The benefit of Mr. Villarreal's participation as President and Owner of Blackhawk Ventures was that Blackhawk Ventures had the access and the ability to bid on contracts that were not available to all construction companies. As a company nominally owned by a service disabled veteran, Blackhawk Ventures could bid on contracts that only "service disable veteran owned small business can compete in," as explained by Mr. Villarreal.

26. Mr. Villarreal did not control the actual bidding that Blackhawk Ventures did – that was done by Federal Management Solutions too. He never saw the project budgets – that too was done by Federal Management Solutions. He didn't procure the subcontractors or decide what bids to accept – that was likewise a Federal Management Solutions responsibility.

27. With regard to the amounts due to CNA (the amounts for which CNA obtained a judgement from this Court), Mr. Villarreal was not aware the amounts were not paid – he "would not have known that" because "it wasn't one of the things that we dealt with as a company." Mr. Villarreal admits Blackhawk Ventures needed the insurance policies from CNA to get these restricted-bid government contracts – the CNA insurance was an essential operating expense. He nonetheless agrees he "didn't have a clue what was going on at Blackhawk" with regard to insurance and what was needed for specific bids Blackhawk made, or for the contacts that Blackhawk obtained.

28.     Although Mr. Villarreal was nominally the President and Owner of Blackhawk Ventures and although Federal Management Solutions was purportedly operating under a "management agreement," Mr. Villarreal does not know how Federal Management Solutions charged for the services provided, and does not know whether Federal Management Solutions actually paid for services and contracts (like insurance and construction subcontracts) that were obtained or entered into on Blackhawk's behalf. In fact, Mr. Villarreal cannot recall whether he has ever seen this "management agreement" with Federal Management Solutions. He was clear that he does not have a copy of the management agreement.

29.     Although he was the President and Owner, Mr. Villarreal was a wage-earning, W-2 employee of Blackhawk Ventures. To his understanding, he was the only employee – everyone else was "carried" by Federal Management Solutions.

30.     Mr. Villarreal agrees that, with the exception of going to site visits, Federal Management Solutions was running the Blackhawk Ventures operation. He did the "procuring" and Federal Management Solutions did everything else.

31.     To Mr. Villarreal's understanding, Michael Wiebracht was the Chief Operating Officer of Federal Management Solutions and Steven Wiebracht was the Chief Financial Officer of Federal Management Solutions. Mr. Villarreal's understanding is that there were various other construction businesses that Federal Management Solutions served as the purported "manager" of. This includes Mr. Villarreal's former employer, Mapco.

32.     Mr. Villarreal's tenure as the President and Owner of Blackhawk Ventures ended when he was asked/told to vacate his office. At the time, he and Blackhawk Ventures were located at 429 West Cevallos, in San Antonio, Texas. Federal Management Solutions was located right

7

next door, at 427 West Cevallos. Apparently Mapco, his former employer, was also located at 427 West Cevallos.

33.     Mr. Villarreal only learned that Blackhawk Ventures would not be able to continue as a going concern because Federal Management Solutions told him there was not any money to meet Blackhawk Ventures' obligations. That was the extent of the information he received. Mr. Villarreal was not involved in any discussions or decision making about what Blackhawk Ventures was going to do about its inability to pay debts as they came due. As with substantially all other aspects of Blackhawk Ventures, this was handled by Federal Management Solutions.

34.     Based on Mr. Villarreal's testimony, Federal Management Solutions and the Wiebracht defendants completely controlled and dominated the Blackhawk Ventures entity, and utilized that entity as a strawman or facade to obtain valuable government contracts, from which they derived substantial revenue to the detriment of creditors of Blackhawk Ventures, including CNA.

## COUNT I – VIOLATION OF THE UNIFORM FRAUDULENT TRANSFER ACT

35.     CNA incorporates by reference the foregoing allegations as if fully set forth herein.

36.     The Uniform Fraudulent Transfer Act is enacted as Texas Business and Commerce Code § 24.001 *et seq.*

37.     Federal Management Solutions and/or Michael and Steven Wiebracht and/or WPS Group, LLC (collectively, the "Federal Management Solutions Defendants") operated Blackhawk Ventures' business under an agreement, and/or controlled substantially all of Blackhawk Ventures' assets, at all relevant times.

8

38.     Under the Uniform Fraudulent Transfer Act, the Federal Management Solutions Defendants are each an "Affiliate" and an "Insider" of Blackhawk Ventures.

39.     Upon information and belief, at all relevant times Blackhawk Ventures has been insolvent within the meaning of Section 24.003 of the Uniform Fraudulent Transfer Act.

40.     Upon information and belief, Blackhawk Ventures made (or was caused to make) one or more transfers to or for the benefit of the Federal Management Solutions Defendants that was fraudulent as to CNA under Section 24.005 of the Uniform Fraudulent Transfer Act, including without limitation because: (I) the transfers were made with actual intent to hinder, delay, or defraud one or more of the Blackhawk Ventures' creditors; and/or (II) Blackhawk Ventures did not receive reasonably equivalent value in exchange for the transfer, and Blackhawk Ventures: (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of Blackhawk Ventures were unreasonably small in relation to the business or transaction; or (B) intended to incur, or believed or reasonably should have believed that Blackhawk Ventures would incur, debts beyond Blackhawk Ventures' ability to pay as they became due.

41.     Additionally, or in the alternative, upon information and belief, Blackhawk Ventures made (or was caused to make) one or more transfers to or for the benefit of the Federal Management Solutions Defendants that was fraudulent as to CNA under Section 24.006 of the Uniform Fraudulent Transfer Act, including without limitation because the transfer was made after Blackhawk Ventures became liable to CNA under the CNA Policies, and the transfer was made without receiving a reasonably equivalent value, and Blackhawk Ventures was insolvent or became insolvent as the result of the transfer.

42.     Based on the testimony of Mr. Villarreal, the nominal President and Owner of Blackhawk Ventures, the specific dates and amounts of the transfers made to or for the benefit of

the Federal Management Solutions Defendants are matters that are within the knowledge of the Federal Management Solutions Defendants and not Mr. Villarreal, given their complete domination of the business and affairs of Blackhawk Ventures.

43.    CNA is owed not less than $102,021.49 by Blackhawk Ventures.  Pursuant to Section 24.008 of the Uniform Fraudulent Transfer Act, CNA is entitled to and CNA seeks:

      a.    Avoidance of one or more transfers avoidable under the Uniform Fraudulent Transfer Act, sufficient to satisfy the claim of CNA (not less than $102,021.49);

      b.    Attachment of the assets of the Federal Management Solutions Defendants in an amount not less than $102,021.49;

      c.    Appointment of a Receiver of the Federal Management Solutions Defendants' assets; and

      d.    Execution against not less than $102,021.49 of the Federal Management Solutions Defendants' assets.

## COUNT II – BREACH OF CONTRACT – ALTER EGO LIABILITY

44.    CNA incorporates by reference the foregoing allegations as if fully set forth herein.

45.    The Federal Management Solutions Defendants utilized Blackhawk Ventures as a strawman or façade to do business and obtain benefits to which they would not otherwise be entitled under applicable law.

46.    The Federal Management Solutions Defendants' conduct was not undertaken for valid business purposes.

47.    The Federal Management Solutions Defendants were the alter ego of Blackhawk Ventures, and accordingly the debts and liabilities of Blackhawk Ventures should be deemed,

adjudged, and decreed to be the debts and liabilities of the Federal Management Solutions Defendants.

48.     CNA is owed not less than $102,021.49 by Blackhawk Ventures, for the reasons set forth in the Complaint attached as Exhibit A and as determined, adjudged and decreed by the Judgment attached as Exhibit B, and therefore the Federal Management Solutions Defendants should be held liable for all amounts that Blackhawk Ventures owes to CNA, due to their use of Blackhawk Ventures as a mere alter ego.

49.     Accordingly, CNA seeks a judgment against the Federal Management Solutions Defendants, jointly and severally, for all amounts owed by Blackhawk Ventures under the Judgment, which is an amount not less than $102,021.49.

## COUNT III – VEIL PIERCING – ACTUAL FRAUD

50.     CNA incorporates by reference the foregoing allegations as if fully set forth herein.

51.     Under Texas law, the "corporate veil" may be pierced in circumstances of "actual fraud."

52.     In this context, actual fraud means dishonesty of purpose or intent to deceive.

53.     The Federal Management Solutions Defendants did not have an honest purpose when they transferred or caused to be transferred the ownership interests of Blackhawk Ventures to Mr. Villarreal.

54.     The Federal Management Solutions Defendants that facilitated Blackhawk Ventures' acquisition of the CNA Policies from CNA did not have an honest purpose when they procured those policies nominally for Blackhawk Ventures, obtained the benefits of the CNA Policies, and then caused Blackhawk Ventures to forego payment of the policy premiums, and

11

instead transferred Blackhawk Ventures' assets to or for the benefit of the Federal Management Solutions Defendants, rendering Blackhawk Ventures unable to pay the amounts due to CNA.

55.     The Federal Management Solutions Defendants who held themselves out as contracting with CNA on behalf of Blackhawk Ventures had a purpose and intent to deceive CNA when they contracted with CNA purportedly on Blackhawk's behalf, including without limitation because they were incurring indebtedness they knew Blackhawk Ventures could not pay, or which they would prevent Blackhawk Ventures from paying and/or being able to pay, including by transferring away Blackhawk Ventures' assets.

56.     Under the totality of the circumstances, cause exists to pierce the corporate veil and hold the Federal Management Solutions Defendants liable for all amounts for which Blackhawk Ventures is liable to CNA.

57.     Accordingly, CNA seeks a judgment against the Federal Management Solutions Defendants, jointly and severally, for all amounts owed by Blackhawk Ventures under the Judgment, which is an amount not less than $102,021.49.

## JURY TRIAL DEMANDED

58.     Plaintiffs demand a jury on all claims and matters triable to a jury.

12

## PRAYER FOR RELIEF

WHEREFORE, CNA respectfully requests that this Honorable Court grant judgment on each of the above-stated causes of action, enter judgment against each of the Federal Management Solutions Defendants, jointly and severally, in an amount not less than $102,021.49, and grant such other and further relief as is equitable and just.

Date: July 1, 2020

Respectfully Submitted,

Shelton & Valadez P.C.
600 Navarro Suite 500
San Antonio, Texas 78205
T: (210) 349-0515

By: _____
ROBERT VALADEZ
State Bar No. 20421845
Federal Bar Id. 10959
DAVID COATES
State Bar No. 00783844
rvaladez@shelton-valadez.com
dcoates@shelton-valadez.com

**ATTORNEY FOR PLAINTIFF
CONTINENTAL CASUALTY COMPANY,
NATIONAL FIRE INSURANCE COMPANY OF
HARTFORD, AND VALLEY FORGE
INSURANCE COMPANY**